**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**NORTHERN DIVISION**
**AT ASHLAND**

**CIVIL ACTION NO. 17-90-DLB-EBA**

**AMERICAN GENERAL LIFE**
**INSURANCE COMPANY**                                            **PLAINTIFF**

**v.**

**THE ESTATE OF CHAD JUDE**                                     **DEFENDANT**

**----------------------**               **MEMORANDUM OPINION**
                                          **AND ORDER**

**THE ESTATE OF CHAD JUDE,**
*and* **LORI JUDE**                                    **COUNTER-PLAINTIFFS**

**v.**

**AMERICAN GENERAL LIFE**
**INSURANCE COMPANY**                            **COUNTER-DEFENDANTS**

* *   * *   * *   * *   * *   * *   * *   * *

This case is before the Court on six pending matters—a Motion for Judgment on the Pleadings (Doc. # 79), cross-Motions for Summary Judgment (Docs. # 86 and 87), two Motions to Exclude (Docs. # 84 and 88), and Objections to a January 24, 2019 Order entered by Magistrate Judge Atkins (Doc. # 106). Each matter has been fully briefed and the Court heard oral argument on the pending matters on May 15, 2019 (Doc. # 110). Therefore, the matters are ripe for the Court's review. For the reasons set forth herein, American General Life Insurance Company's Motion for Summary Judgment (Doc. # 86) is **granted**. All other pending matters are **denied as moot**.

**I.      FACTUAL BACKGROUND**

In June of 2014, American General Life Insurance Company ("American

General")—through Matrix Direct, its agency service—reached out to Chad Jude in an attempt to sell him a life-insurance policy. (Doc. # 15 at 5). Chad Jude purchased a term life-insurance policy with a death benefit amount of $500,000—Policy No. YMD7350711—which was issued on July 12, 2014. *Id.* Chad Jude made timely payments on the policy. *Id.* In July of 2015, American General—through agent Daniel Baldwin—reached out to Chad Jude to help him "reevaluat[e] his insurance needs." *Id.* Chad Jude was interested in expanding his insurance coverage and undertook the process to increase his coverage. *Id.* at 5-6. This included signing insurance application forms—which Chad Jude claims were filled out on his behalf by American General's agent and not adequately explained to him—and undergoing a medical examination. *Id.* Specifically, Chad Jude signed Part B of the American General application form, the form that includes questions about a potential insured's health history, on August 4, 2015. (Doc. # 1-1 at 10). On September 4, 2015, Chad Jude's new term life-insurance policy—this one for $1,500,000—was issued and the half-million-dollar policy was terminated. (Docs. # 15 at 6 and 86-12 at 1). On September 21, 2015, Jude was directed by American General agent Sandra Hawkins to sign "The Policy Acceptance and Amendment of Application Form" ("PAA"), which he did. *Id.* American General received Chad Jude's first premium payment for the new policy on October 2, 2015. (Doc. # 86-6 at 1).

During the application process, Chad Jude informed American General, through its agents, that he suffered from dysphagia and had been treated for vocal-cord problems resulting from complications from pneumonia. *Id.* at 6-7. Chad Jude claims that "as a result of the complications and symptoms previously disclosed to American General" he had a brain MRI on August 15, 2015. *Id.* at 7. The results indicated that Chad Jude had

Chiari I Malformation, a non-life-threatening "condition in which the brain tissue extends into the spinal cord." *Id.* Following this diagnosis, on August 20, 2015, Dr. Paul Bryson of the Cleveland Clinic referred Chad Jude to "neurosurgery." (Docs. # 90-2 at 1 and 96 at 1). On September 2, 2015, Lori Jude contacted the Cleveland Clinic to cancel Chad's scheduled appointment with Dr. Edward Benzel for that day. (Doc. # 96 at 5). She indicated that Chad had spent the evening of September 1, 2015 in the emergency room because he had choked on food. *Id.* Lori reported that "his condition is deteriorating rapidly with difficult speech, swallowing and decreased upper extremity strength." *Id.* The following day, September 3, 2015, Chad was seen by Dr. Sarel Vorster, a doctor in the Neurosurgery Department at the Cleveland Clinic. (Docs. # 90-2 at 1-4 and 103 at 3). Chad Jude had another brain MRI on September 14, 2015. (Doc. # 90-2 at 7-10). The results, dated September 15, 2015, again indicated that Chad Jude had a Chiari I Malformation. *Id.* On September 30, the Judes were told that Dr. Vorster recommended decompression surgery. *Id.* at 16. Chad Jude had his pre-surgery physical on October 1, 2015 and was "cleared for surgery pending normal labs." (Doc. # 90-3). Chad Jude underwent surgery to repair the malformation on October 4, 2015 and went back to work in December 2015. (Doc. # 15 at 7). In February 2016, Chad Jude was diagnosed with Amyotrophic Lateral Sclerosis (ALS). *Id.*

In 2016, Chad Jude allegedly received additional direct solicitation from American General. *Id.* On March 30, 2017, however, American General sent Chad Jude a letter indicating that it was rescinding Chad Jude's 1.5-million-dollar policy; included with the letter was a refund of the $2,738.47 in premiums paid on that policy and a voluntary rescission agreement. *Id.*; (Doc. # 86 at 7-8). Following the letter informing Chad Jude

of the rescission, Chad Jude claims he continued to receive direct solicitations from American General about modifying his policy and continued to make premium payments. (Doc. # 15 at 7-8).  He alleges that, despite the policy being rescinded, "some payments have been accepted and retained."  *Id.*  at 8.

## II.    PROCEDURAL HISTORY

This action commenced on August 18, 2017, when American General petitioned the Court for a declaratory judgment against Defendant Chad Jude.  (Doc. # 1 at 1). Specifically, American General requests that the Court declare the 1.5-million-dollar policy issued to Chad Jude in September of 2015—Policy No. YMD7405546—to be null and void "due to the Defendant's material misrepresentations on the subject policy application."  *Id.*  American General alleges that Chad Jude did not fully disclose his medical history—including that he had been diagnosed with Chiari I Malformation after an August 15, 2015 MRI—and "[h]ad American General been given a complete disclosure . . . the policy would not have been issued."  *Id.* at 4.

American General indicates that Part B of the insurance application, which Chad Jude signed on August 4, 2015 and which included a number of medical questions, included a note that there would be no insurance contract until three specific conditions were met.  (Doc. # 86 at 4).  The third condition for the insurance contract to be valid is that there was "no change in health of the Proposed Insured(s) *that would change the answers to any question in the application*" between the completion of the application and both the delivery and acceptance of the policy, and the payment of the first full modal premium.  *Id.* (emphasis added).  The insurance policy was issued on September 4, 2015. (Doc. # 1 at 2).  On September 21, 2015, Chad Jude signed the PAA which required him

to agree that:

> 1. There have been no changes *since the date of the application* in my health or in any other condition;
>
> 2. Neither I nor any other proposed insured has *since the date of the application*:
>
>> a. Consulted a licensed health care provider or received medical or surgical advice or treatment; or
>>
>> b. Acquired any knowledge or belief that any statements made in the application are now inaccurate or incomplete.

(Doc. # 86 at 5) (emphasis added). According to American General, because the conditions required for the insurance policy to form were not satisfied—there were changes in Chad Jude's health between August 4, 2015 when he applied for the policy and October 2, 2015 when he made his first payment[1]—the company rescinded the policy. *Id.* at 1, 5, 7.

Chad Jude answered the Complaint on November 21, 2017. (Doc. # 15 at 1-3). Additionally, at the same time, Chad Jude and his wife—Lori Jude—("the Judes") brought common-law and statutory counterclaims under Kentucky law against American General. *Id.* at 8-13. The Judes allege six claims—breach of contract (Count I); violations of Ky. Rev. Stat. § 304.12-030—Replacement Life Insurance, Unfair and Deceptive Practices, and Unfair Claims Settlement Practices (Counts II-IV); violation of Ky. Rev. Stat. § 367.170—Consumer Protection (Count V); and breach of duty to act in good faith (Count VI). *Id.* The Judes also request punitive damages. American General responded to the

---

[1] The first premium payment was received by American General on October 2, 2015. (Doc. # 86-6 at 1). American General acknowledged during oral argument, however, that its internal system indicated the premium was applied to the policy and the policy went into force on October 7, 2015. As explained, *supra*, whether the premium payment was received on October 2nd or 7th does not change the Court's conclusion. For the sake of clarity, the Court will consider October 2nd, the more restrictive date, to be the date on which the premium was received.

counterclaims on December 6, 2017.  (Doc. # 16).

After Chad Jude's death on December 30, 2017, the Estate of Chad Jude was substituted as the Defendant and a Counter-Plaintiff in this action.[2]  (Docs. # 30 and 31).  In August of 2018, American General sent Lori Jude a check for $533,424.21—effectively reinstating the half-million-dollar life-insurance policy Chad Jude had terminated and paying out the benefits.[3]  (Doc. # 86-12).  Ten months later, on October 16, 2018, American General moved for judgment on the pleadings as to the counterclaims by Lori Jude.  (Doc. # 79).  Cross-Motions for Summary Judgment were then filed on November 16, 2018.  (Docs. # 86 and 87).  Also pending are two Motions to Exclude (Docs. # 84 and 88)—one to exclude recordings produced by American General and the other to exclude the Judes' expert—as well as Objections to one of Magistrate Judge Atkins's orders.  (Doc. # 106).  All pending matters have been fully briefed (Docs. # 82, 85, 93, 94, 97, 98, 101, 102, 103 and 104) and, following oral argument held on May 15, 2019 before the undersigned, are now ripe for the Court's review.

## III.  CROSS-MOTIONS FOR SUMMARY JUDGMENT (DOCS. # 86 and 87)

In its Motion for Summary Judgment, American General moves for summary judgment on its declaratory-judgment claim and all counterclaims filed against it by the Judes.   (Doc. # 86).  The Judes filed a cross-Motion for Summary Judgment requesting the Court grant summary judgment on three of the counterclaims—Count II, Count III, and Count V—they brought against American General.  (Doc. # 87).

---

[2]     References to "the Judes" throughout the remainder of this Memorandum Opinion and Order refer to Lori Jude and the Estate of Chad Jude—the Counter-Plaintiffs in this action.

[3]     As a result, all that is at issue in this declaratory-judgment action is $1,000,000—the difference between the 1.5-million-dollar policy and the half-million-dollar policy which was reinstated by American General.

## A. Standard of Review

Summary judgment is granted when there is no genuine issue of material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A material fact is one "that might affect the outcome of the suit under governing law." *Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 248 (1986). The role of the judge is to review the evidence and "determine[] whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250. If no such issue of material fact exists, summary judgment may be granted if the moving party is "entitled to [such] judgment as a matter of law." Fed. R. Civ. P. 56(a).

The moving party must explain the basis for its motion and reference evidence which "demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). That burden on the moving party may be "discharged by 'showing' . . . that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. Thus, summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322. "To prevail, the non-movant must show sufficient evidence to create a genuine issue of material fact." *B.F. Goodrich Co. v. U.S. Filter Corp.*, 245 F.3d 587, 592 (6th Cir. 2001). Sufficient evidence is more than a "mere scintilla"; there must be enough evidence that a jury could decide for the non-moving party. *Anderson*, 477 U.S. at 252. An opponent of summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574,

587 (1986).  When considering a motion for summary judgment, the Court must view any evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor.  *Hamilton Cty. Educ. Ass'n v. Hamilton Cty. Bd. of Educ.*, 822 F.3d 831, 835 (6th Cir. 2016).

## B.  Choice of Law

A federal court sitting in diversity must apply the substantive law of the state in which it is sitting.  *See Hanna v. Plumer*, 380 U.S. 460, 465-66 (1965) (explaining *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938)).  This includes applying the choice-of-law rules of the state in which the court sits.  *Phelps v. McClellan*, 30 F.3d 658, 661 (6th Cir. 1994). Thus, in this case, the Court must apply Kentucky's choice-of-law rules.

Under Kentucky choice-of-law rules "there is a strong preference . . . for applying Kentucky law."  *Wells Fargo Fin. Leasing, Inc. v. Griffin*, 970 F. Supp. 2d 700, 707 (W.D. Ky. 2013) (collecting cases).  "[T]he law of the forum . . . should not be displaced without valid reasons."  *Foster v. Leggett*, 484 S.W.2d 827, 829 (Ky. 1972).  In other words, Kentucky is "very egocentric or protective concerning choice of law questions."  *Paine v. La Quinta Motor Inns, Inc.*, 736 S.W.2d 355, 357 (Ky. Ct. App. 1987), *overruled on other grounds by Oliver v. Schultz*, 885 S.W.2d 699 (Ky. 1994).  In general, "a court must apply Kentucky's law when there are not overwhelming interests to the contrary."  *Asher v. Unarco Material Handling, Inc.*, 737 F.Supp.2d 662, 666 (E.D. Ky. 2010).  In Kentucky, separate choice-of-law analyses exist for claims arising under tort and contract.  *Wells Fargo Fin. Leasing, Inc.*, 970 F.Supp.2d at 707 (citing *Saleba v. Schrand*, 300 S.W.3d 177, 181 (Ky. 2009)).

In contract cases brought in Kentucky, Kentucky law applies if Kentucky is the state with the "most significant relationship to the transaction and the parties." *Breeding v. Mass Indem. & Life Ins. Co.*, 633 S.W.2d 717, 719 (Ky. 1982); *see also Saleba*, 200 S.W.3d at 181. In determining what state has the most significant relationship, the court looks to: "the place or places of negotiating and contracting; the place of performance; the location of the contract's subject matters; and the domicile, residence, place of incorporation and place of business of the parties." *State Farm Mut. Auto Ins. Co. v. Hodgkiss-Warrick*, 413 S.W.3d 875, 878-79 (Ky. 2013).

Here, there is no dispute that Kentucky is the state with the most significant relationship to the transaction and parties. The life-insurance policy was purchased by a Kentucky resident, and was intended to benefit his family members domiciled in Kentucky. (Doc. # 15 at 4-5). This suit arose from a misrepresentation allegedly committed by a Kentucky resident presumably in Kentucky. *Id.* at 4-6; *see also* (Doc. # 1 at 2-4). Accordingly, the Court will apply Kentucky law.

### C.  Existence of Policy

#### 1.  *Conditions Precedent Pleading Issue*

The Judes argue that American General did not specifically plead its condition-precedent argument in its Complaint and, therefore, may not rely on it. (Doc. # 87 at 14). The Judes rely on Federal Rule of Civil Procedure (FRCP) 9(c) to support their argument. *Id.* The Judes' argument, however, is misguided. FRCP 9(c) is not applicable to the declaratory-judgment action before the Court.

FRCP 9(c) only requires that the satisfaction of conditions precedent be pled generally and any defenses to conditions precedent be pled specifically. This rule

"applies to performance or occurrence of conditions precedent to liability." *EEOC v. Griffin Wheel Co.*, 360 F. Supp. 424, 425 (N.D. Ala. 1973). The rule does not, however, "impose an *obligation* on plaintiffs to plead the performance or occurrence of conditions precedent. Rather, it is the *applicable substantive law* that determines whether the performance or occurrence of conditions precedent is an element of the claim" and whether it must be pled. 5A CHARLES ALAN WRIGHT, ET AL., Federal Practice and Procedure § 1303 (4th ed. 2018) (emphasis added) (footnotes omitted); *see also Kiernan v. Zurich Co.*, 150 F.3d 1120, 1124 (9th Cir. 1998) ("Rule 9(c) does not expressly require that performance of conditions be pled, it merely sets forth the manner in which such pleadings should be made.").

Case law indicates that, in the contract realm, FRCP 9(c) is applicable in breach-of-contract actions. *See, e.g.*, *Bus. Payment Sys., LLC v. Nat'l Processing Co.*, No. 3:10-cv-669, 2012 WL 6020400, at *10 (W.D. Ky. Dec. 3, 2012); *Young Women's Christian Ass'n of Nat'l Capital Area, Inc. v. All State Ins. Co. of Can.*, 158 F.R.D. 6, 7-8 (D.D.C. 1994). In those cases, a plaintiff must generally plead "that it performed all contractual conditions required of it" before bringing suit. *Byczek v. Boelter Co., Inc.*, 264 F. Supp. 2d 720, 723 (N.D. Il. 2003); *see also* WRIGHT, ET AL., *supra*, § 1303 ("A condition precedent is most notably a concept from contract law that refers to an act or event that must exist or occur before there is a right to performance under a contract. Under the law of contracts in some states, the performance by the plaintiff of conditions precedent is identified as an element of a breach of contract claim." (footnotes omitted)).

The declaratory-judgment action before the Court, however, is not a breach-of-contract claim. Here, the Court has yet to determine whether a contract was formed at

all.  *See infra* Part III.C.3-4.  The Court is not yet considering liability under a contract but must first consider whether there is any contract between the parties.  In doing this, the Court is focusing on conditions precedent to contract *formation*, rather than *litigation* of the contract.  *See infra* Part III.C.3*.*  American General is not pursuing a claim with elements that must be satisfied in order for relief to be granted; rather, it is merely seeking a declaration from this Court that a policy is void.  (Doc. # 1).  The Judes have not cited any cases indicating that the nonoccurrence of conditions precedent to contract *formation* must be pled under Rule 9(c) in a declaratory-judgment action like the one at bar.[4]  (Docs. # 87 at 14, 98 at 12, and 102 at 5).  Since Rule 9(c) does not apply to the case before the Court, the Judes' Rule 9(c) argument lacks merit.

Further, even if FRCP 9(c) did apply to this action, the Court finds that American General has satisfied the rule's requirements.  The Sixth Circuit has indicated that "plead[ing] performance of conditions precedent" in a request for admissions is sufficient to satisfy the requirements of Rule 9(c).  *Ginsburg v. Ins. Co. of N. Am.*, 427 F.2d 1318, 1322 (6th Cir. 1970).  By analogy, the Court finds that American General's supplemental interrogatory answers, which included a specific denial that the conditions precedent to policy formation occurred, were also sufficient to satisfy the Rule 9(c) pleading

---

[4]    *Trinity Carton Co. Inc. v. Falstaff Brewing Corp.*, 767 F.2d 184 (5th Cir. 1985), is the only case cited by the Judes that appears to tangentially deal with a contract-formation issue.  (Doc. # 87 at 14).  *Trinity Carton* was a breach-of-contract case in which the Defendant denies that a contract was formed because a condition precedent to formation was not met.  *Trinity Carton Co. Inc.*, 767 F.2d at 187, 189.  The court focused on the need for the Defendant to have specifically and particularly pled in its answer the denial of a condition precedent.  *Id.* at 189.  *Trinity Carton* is distinguishable from the case at bar.  *Trinity Carton* is a breach-of-contract action—the Plaintiffs premise the suit on the allegation that the contract exists, and the Defendant is bringing up contract formation and the failure of a condition precedent as an *affirmative defense.  Id.*  The case here is different—this is a declaratory-judgment action where the Plaintiffs premise the litigation on the allegation that a contract never existed; the condition-precedent issue is an argument in support of the claim.  Additionally, *Trinity Carton* is out-of-circuit precedent and is not binding on this Court.

requirement.  (Doc. # 94-4 at 1-2).

Additionally, the Sixth Circuit has held that the assertion that a condition precedent did not occur may be included in a summary-judgment motion, as it is here.  *Heights Driving Sch., Inc. v. Top Driver, Inc.*, 51 F. App'x 932, 939-940 (6th Cir. 2002).  In *Heights Driving School*, the court "consider[ed] it relevant" that the defendant had notified the plaintiff that a condition precedent had not been satisfied in a letter sent to the plaintiff the day the lawsuit was filed.  *Id.*  The fact that the conditions precedent were listed in a letter sent by American General to Chad Jude on March 30, 2017, (Doc. # 87-1 at 2), prior to the initiation of litigation, suggests that the inclusion of the condition-precedent argument in American General's summary-judgment motion constituted sufficient notice to satisfy the Rule 9(c) requirements.  Thus, even if Rule 9(c) did apply, the Court finds that American General is permitted to proceed with the argument that there was not a valid insurance policy because all three conditions precedent to contract formation were not met, despite not having specifically included the conditions-precedent argument in the Complaint.

This conclusion is further supported by the rationale behind the pleading rules. "Courts and commentators have traditionally noted that Rule 9 must be read in light of the basic pleading philosophy set forth in Rule 8."  WRIGHT, ET AL., *supra*, § 1291 (footnote omitted).  Rule 8 requires that complaints "contain sufficient factual matter, accepted as true to 'state a claim to relief that is plausible on its face.'  A claim has facial plausibility when the plaintiff pleads factual conduct that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"The function of a complaint is to afford the defendant fair notice of what the plaintiff's claim is . . . [it] need not set down in detail all the particularities of a plaintiff's claim." *Decorative Panels Int'l, Inc. v. Int'l Ass'n of Machinists and Aerospace Workers Local Lodge W*-260, 996 F. Supp. 2d 559, 568 (E.D. Mich. 2014). In other words, the rule does not require that a complaint contain every argument a plaintiff plans to put forward in support of the claims pled. Such a requirement would run contrary to the pleading requirement—"a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). FRCP 8 in conjunction with Rule 9(c) merely requires that conditions precedent *to a valid claim* be pled. It does not require that any mention of a condition precedent later in litigation must be preceded by a mention of the condition in the complaint.

Here, American General has pled its claim; it states that Chad Jude included material misrepresentations in his application and thus the insurance policy should be declared void. (Doc. # 1). American General, however, is not required to divulge every argument in support of its claim—including that the conditions precedent to contract formation were not met—in the Complaint. Additionally, Chad Jude was given notice of the conditions precedent in the March 30, 2017 letter from American General. (Doc. # 87-1 at 2) (including the condition-precedent language that Chad Jude agreed to in the initial policy application). Accordingly, the Court finds the pleadings in this case are sufficient and holds that American General's argument that the conditions precedent to contract formation were not met, may be considered.

### 2. Valid Conditions Precedent

A condition precedent—a legal term of art—is "[a]n act or event, other than a lapse

of time, that must exist or occur before a duty to perform something promised arises." *Superior Steel, Inc. v. Ascent at Roebling's Bridge, LLC*, 540 S.W.3d 770, 785 (Ky. 2017) (internal citations omitted). "The failure of a condition precedent to contract *formation* invalidates the entire agreement." *Mercury Dev., LLC v. Motel Sleepers*, No. 6:11-cv-147-CFVT-HAI, 2013 WL 5374184, at *5 (E.D. Ky. Sept. 25, 2013) (*citing Clarion Mfg. Corp. of Am. v. Justice*, 971 S.W.2d 288, 289-90 (Ky. 1998)). The Kentucky Supreme Court is wary of construing language as a condition precedent to formation, unless it is clear that a condition precedent was intended. *Id.* (citing *Honaker v. Duro Bag Mfg. Co.* 851 S.W.2d 481, 482 (Ky. 1993)); *see also A.L. Pickens Co. v. Youngstown Sheet and Tube Co.*, 650 F.2d 118, 121 (6th Cir. 1981).

Here the language at issue is clear and unambiguous. The insurance application states that "no insurance will be in effect under this application . . . unless or until" three conditions are satisfied. (Doc. # 86 at 5). In other words, the life-insurance policy will not become valid—the contract will not form—unless all three conditions are met. The first two conditions are obvious conditions precedent under the legal definition. Each are events—(1) delivery and acceptance of the policy and (2) the full first modal premium payment—that must occur before the policy goes into effect. *Id.*; *Superior Steel, Inc.* 540 S.W.3d at 785. The Judes do not appear to dispute this conclusion. *See* (Doc. # 87 at 15-16) (arguing only that the third condition is not a condition precedent).

At issue is the third condition, which requires that "there has been no change in health of the Proposed Insured(s) that would change the answers to any question in the application before items (1) and (2) in this paragraph have occurred." (Doc. # 86 at 5). The Judes claim that this final condition is a warranty, rather than a condition precedent,

and any violation of the warranty by a misrepresentation in the insurance application "render[s] the policy voidable, but not void *ab initio*." (Doc. # 87 at 15-16). The Judes' argument, however, is based completely on cases applying Ohio—rather than Kentucky—law. *Id.* (relying on *Ohio Nat'l Life Assur. Corp. v. Satterfield*, 956 N.E.2d 866 (Ohio Ct. App. 2011), an Ohio Court of Appeals case, and *Ramsey v. Penn Mut. Life Ins. Co.*, 787 F.3d 813, 822 (6th Cir. 2015), a Sixth Circuit case applying Ohio law). Thus, the cases they rely on do not guide this Court.

Additionally, and more importantly, the Ohio cases cited by the Judes run contrary to Kentucky law. First, Ky. Rev. Stat. § 304.14-110, which allows for the rescission of an insurance policy when certain misrepresentations were made in the application, makes policies void *ab initio*.[5] *Nationwide Mut. Fire Ins. Co. v. Nelson*, 912 F.Supp.2d 452, 454 (E.D. Ky. 2012) (Thapar, J.) ("[W]hen a policy is voided under section 304.14-110 it is retroactively undone, 'void ab initio' . . . it is as if there was never a beginning agreement between the insurer and the insured."). Policies are not merely *voidable* when a specific misrepresentation in the application is made, as the Judes argue. (Doc. # 87 at 15-16). Thus, the Judes' argument, based on Ohio law, runs counter to Kentucky law.

Additionally, Kentucky state law *prohibits* warranties in insurance applications. Ky. Rev. Stat. § 304.14-110 ("All statements and descriptions in any application for an insurance policy . . . shall be deemed to be representations and not warranties"). The Judes seem to skim over this hiccup and claim that the at-issue condition, which they

---

[5]     The statute voids policies when an insured makes a material or fraudulent misrepresentation in the insurance application, or when an insured makes a misrepresentation that, without it, "the insurer would either not have issued the policy or contract, or would not have issued it at the same premium rate, or would not have issued a policy or contract in as large an amount, or would not have provided coverage with respect to the hazard resulting in the loss." Ky. Rev. Stat. § 304.14-110.

argue would be a warranty under Ohio law, must be considered a representation in Kentucky. (Doc. # 87 at 16). They fail, however, to cite any case law for this chain-link proposition. *Id.* The Judes have concocted a piecemeal argument, relying on out-of-state precedent. The Court will not accede to such an argument when there is clear Kentucky precedent which mandates the opposite conclusion. *See Nelson*, 912 F.Supp.2d 454; *see also infra.*

The only relevant case interpreting and applying Kentucky law to a situation like this one runs completely contrary to the Judes' argument. In that case, American General brought a declaratory-judgment action seeking "a declaration that no policy of insurance existed between it and [the insured]" because the insured made misrepresentations in the insurance application. *Am. Gen. Life Ins. Co. v. Harshman*, No. 12-cv-129-WOB-REW, 2015 WL 5474177, at *1, *3 (E.D. Ky. Sept. 17, 2015). The at-issue language in the application in *Harshman* is the same language used in the application forms that Chad Jude completed. *Compare id.* at *1, *with* (Doc. # 86 at 5). Judge Bertelsman interpreted the exact conditions at issue here and found each of the three requirements to be "an unambiguous condition precedent to coverage." *Harshman*, 2015 WL 5474177, at *6.

Finding this third condition to formation of the insurance policy, which precludes formation of an insurance policy if an applicant does not disclose certain changes in health, to be condition precedent to policy formation, is also supported by the policy behind the very statute that the Judes cite. "[Ky. Rev. Stat.] 304.14-110 reflects a public policy requiring 'those who apply for insurance be honest and forthright in their representations.'" *Progressive N. Ins. Co. v. Corder*, 15 S.W.3d 381, 384 (Ky. 2000) (quoting *State Farm Mut. Auto. Ins. Co. v. Crouch* 706 S.W.2d 203, 207 (Ct. App. Ky.

1986)).   As the only relevant precedent from Kentucky finds this language to be a condition precedent to policy formation, the Court, without further guidance from the Kentucky Supreme Court, finds this final requirement to be a condition precedent as well.

### 3.    *Policy Did Not Form*

The policy did not form because all three conditions precedent to policy formation were not met.  At issue is the third condition—"there has been no change in health of the Proposed Insured(s) that would change the answers to any question in the application before" both the delivery and acceptance of the policy and the payment of the first full modal premium.  (Doc. # 86 at 5).  Chad Jude signed Part B of the insurance application acknowledging these conditions precedent on August 4, 2015.[6]  (Doc. # 1-1 at 10).  The policy then issued on September 4, 2015, (Doc. # 1-3 at 3) and the first payment for the policy was received on October 2, 2015.  (Doc. # 86-6 at 1).  Any changes in Chad Jude's health between August 4 and October 2, 2015, which would have changed his answers to any insurance-application questions, would have precluded the third condition precedent from being met and, thus, precluded formation of the insurance-policy contract.

Here, there is no issue of material fact that between August 4 and October 2, 2015, there were changes in Chad Jude's health that would have changed the answers to questions on the application.  Chad Jude's wife, Lori, admitted that this was the case during her deposition.[7]  (Doc. # 86-13 at 89:12-18, 90:17-21, 91:4-8, 95:15-20, 115:1-21,

---

[6]    The Judes claimed during oral argument that August 20th or 21st of 2015 is the date on which the application was deemed submitted because Part A of the Application was re-signed on either August 20th or 21st at the request of American General.  (Doc. # 1-1 at 4).  As explained, *infra*, whether it was signed on August 4, August 20, or August 21 does not make a difference to the analysis and ultimate conclusion.

[7]    Lori Jude admitted that there were changes in Chad Jude's health prior to October 7, 2015 that would have changed the answers on his insurance application.  (Doc. # 86-13 at 89:12-18, 90:17-21, 91:4-8, 95:15-20, 115:1-21, 116:7-11).  October 7th represents the date that the premium was "applied" to the policy and the policy went into force.  *See supra* Part II.  In reviewing the application questions, (Doc. # 1-

116:7-11) (admitting that there were changes in Chad Jude's health prior to October 7, 2015 that would have changed the answers on his insurance application). Specifically, questions on the Part B application included "[h]as the proposed insured ever been diagnosed as having, been treated for or consulted a licensed health care provider for . . . a disorder of the brain or spinal cord or other nervous system abnormality" and "[o]ther than previously stated, in the past 10 years, has the Proposed Insured: 1) been hospitalized, consulted a health care provider or had any illness, injury or surgery?" (Doc. # 1-1 at 8-10). Chad Jude had answered "no" to each question. *Id.* Considering the timing of Chad Jude's diagnosis of Chiari I Malformation, medical appointments, and MRIs, *see supra* Part I, there is no doubt that his answers to questions on the application would have changed due to his changes in health. Specifically, Chad Jude's answer to both of the above-referenced questions would have been "yes" on October 2, 2015. Thus, there is no issue of material fact that the third condition to policy formation was not met.[8] As all three conditions precedent to formation were not met, no insurance policy was formed. Accordingly, the Court finds that summary judgment on American General's declaratory-judgment action is appropriate and holds that the 1.5-million-dollar insurance policy is null and void.[9]

---

1), and the dates of Chad Jude's medical tests and consultations, *see supra* Part I, the Court finds that Lori Jude's answers would have been the same had she been asked about Chad Jude's changes in health prior to October 2, 2015.

[8]      The Judes claimed during oral argument that the window to be considered is August 20 or 21, 2015 to October 2, 2015. Even if that were the case, Chad Jude still had an MRI and multiple medical appointments during that time period, which would have changed the answers to questions on his application. *See supra* Part I. Using the later date, there is still no issue of material fact that the third condition precedent was not met.

[9]      The Judes suggested at oral argument that Chad Jude did not read the application before he signed it. This is immaterial. "[W]hether [he] read the application or not, [Chad Jude is] held to have actual or constructive knowledge of its contents. Further, by signing the application [Chad Jude] adopted the answers as [his] own." *Hornback v. Bankers Life Ins. Co.*, 176 S.W.3d 699, 704 (Ky. Ct. App. 2005).

#### *4.   Material Misrepresentation*

If a Kentucky court were to find the final condition, discussed *supra*, to be a warranty or representation, rather than a condition precedent, or the condition-precedent argument invalid because it was not pled in the Complaint, summary judgment would still be appropriate on American General's declaratory-judgment claim.   Ky. Rev. Stat. § 304.14-110 allows for the revocation of insurance policies in three circumstances—(1) a fraudulent misrepresentation is included in the application, (2) a misrepresentation is either material "to the acceptance of the risk, or to the hazard assumed by the insurer," or (3) when the insurance company, had the application been truthfully completed, would not have issued the policy.   Here, there is no issue of material fact that Chad Jude included a material misrepresentation in his application.   If the Court finds that there was a material misrepresentation in the application, then the policy is void *ab initio* and the Court treats the policy as if it never formed.   *Nelson*, 912 F. Supp. 2d at 454; *see also Progressive Specialty Ins. Co. v. Rosing*, 891 F. Supp. 378, 380 (W.D. Ky. 1995); *Crouch*, 706 S.W.2d at 207.   In other words, "a misrepresentation voids an insurance policy if the misrepresentation is 'material' to the acceptance of the risk."   *Continental Cas. Co. v. Law Offices of Melbourne Mills, Jr., PLLC*, 676 F.3d 534, 538 (6th Cir. 2012).

The Court finds that Chad Jude's misrepresentations in his insurance application were material because they impacted the risk of insuring Chad Jude.   Exactly what evidences a *material* misrepresentation for purposes of Ky. Rev. Stat. § 304.14-110(2) is not completely clear.   "[A] misrepresentation is material if 'the insurer, acting reasonably and naturally in accordance with the usual practice of . . . insurance companies under similar circumstances, would not have accepted the application if the substantial truth had

been stated therein.'" *Id.* at 539 (quoting *Mills v. Reserve Life Ins. Co.*, 335 S.W.2d 955, 958 (Ky. 1960)).  Thus, the Sixth Circuit has found that "many of the reasons that support a determination of 'materiality' under [Ky. Rev. Stat.] § 304.14-110(2) also support a holding that [a] misrepresentation satisfied section (3) of the statute as well." *Id.*; *see also MacKenzie v. Prudential Ins. Co. of Am.*, 411 F.2d 781, 782 (6th Cir. 1969) (quoting *Northwestern Mut. Life Ins. Co. v. Yoe's Ex'r*, 141 S.W.2d 554 (1940)) ("the standard by which materiality is to be determined is the action which insurance companies generally would have taken on the application, when acting in accordance with their usual practice and usage, if the truth had been told").  The same court, however, approvingly noted that a Western District of Kentucky court found that "a misrepresentation was material solely on the basis of *commonsense assumptions* regarding what would have an impact on the decision making process of a reasonable insurance company . . . documents or employee testimony were not necessary to support this determination."  *Continental Cas. Co.*, 676 F.3d at 540 (emphasis added).

The Judes admit that "failing to disclose a change in health is regarded as a material misrepresentation under Kentucky law."  (Doc. # 102 at 6) (citing *MacKenzie*, 411 F.2d at 783 (finding that a failure to "divulge his high blood pressure reading must be regarded as a material misrepresentation sufficient to void the policy")).  The Court finds that the Judes' statement of the law lacks the nuance set forth in the *Mackenzie* case. 411 F.2d at 783.  While that court did find that it was a material misrepresentation to fail to tell the insurance company about high blood pressure, that court's reasoning appears to be based on the fact that one's high blood pressure would be taken into account by an

insurance company in considering risk and determining whether to insure the applicant. *Id.* at 782.

The Court, however, considering the plain language of the statute and Sixth Circuit precedent, tends to agree with this general, commonsense understanding of material misrepresentation.  Any change in the health of a potential insured impacts the risk to the insurance company of insuring that person; thus, any change in health of the insured fits within a plain reading of Ky. Rev. Stat. § 304.14-110(2) as a change in health is "material . . . to the acceptance of the risk."  More specific to the misrepresentation at issue here, Judge Bertelsman previously found he could take judicial notice of the fact that failing to disclose ALS, another neurological disorder, is a material misrepresentation.  *See Harshman*, 2015 WL 5474177, at *6.

The Judes argue, however, that Chad Jude's health did not change, rather, his diagnosis merely changed, and therefore the misrepresentations made by Chad Jude were not material.  (Docs. # 87 at 16-17 and 98 at 6-7).  The Judes fail to cite any precedent for their proposition and the Court finds their argument to be unpersuasive. They argue that a diagnosis of Chiari I Malformation was not a change in Chad Jude's health.  The Judes claim, however, that "if prior to the delivery of the policy and payment of the first premium, Chad Jude contracted cancer . . . then it could be said that his 'health' had changed.'" (Doc. # 87 at 17).  The Court fails to find a meaningful distinction between a cancer diagnosis and a diagnosis of Chiari I Malformation.  Cancer is a disease that can cause a variety of symptoms, which may be consistent with other ailments.  For example, a headache can be indicative of stress or a brain tumor.  *Headache Causes*, Mayo Clinic, https://www.mayoclinic.org/symptoms/headache/basics/causes/sym-

20050800. (last visited May 8, 2019).  Similarly, a stomachache may indicate acid reflux or stomach, pancreatic, or bowel cancer.  Jennifer Huizen, *15 Possible Causes of Abdominal Pain*, MEDICAL NEWS TODAY (Nov. 15, 2018), https://www.medicalnewstoday.com/ articles/318286.php (last visited May 8, 2019). Here, the symptoms Chad Jude experienced—initially diagnosed as a respiratory condition—are also indicative of Chiari I Malformation.  (Doc. # 87 at 17).  The fact that symptoms may be initially attributed to one ailment, does not preclude the Court from finding a change in health when a final, accurate diagnosis is made.  The Judes do not appear to suggest that there is no change in health if a patient, previously diagnosed with acid reflux, received an updated diagnosis of cancer.

Additionally, cancer can be present in one's body before a formal diagnosis of the disease is made; it does not magically appear when a doctor makes a diagnosis.  One could make the same argument about cancer that the Judes do about Chiari I Malformation—that someone who is diagnosed with cancer had no change in his or her health condition, but merely a change in diagnosis, because the cancer existed in the body before the diagnosis was made.  The Judes admit, however, that a cancer diagnosis is indicative of a change in health.  (Doc. # 87 at 17).  As there is no material distinction between either diagnosis, the Court finds the Judes' argument to be unpersuasive.

Chad Jude indicated in his August 4, 2015 insurance application that he had never been diagnosed with, treated for, or consulted a health care provider about "a disorder of the brain or spinal cord."  (Doc. # 1-1 at 8).  He also represented that, in the last ten years, he had never "consulted a health care provider or had any illness, injury or surgery" other than what had previously been disclosed.  *Id.* at 9.  Chad Jude then signed the PAA on

September 21, 2015 indicating that he had *no changes in his health since filling out the* *application*, and that he had not consulted a health-care provider or received medical treatment. (Doc. # 1-2). Chad Jude failed to indicate, however, that he had been diagnosed with Chiari I Malformation on August 15, 2015. (Doc. # 90-1). Thus, Chad Jude misrepresented his health condition when he signed the PAA on September 21, 2015, (Doc. # 1-2), by failing to disclose a change in health—his diagnosis of Chiari I Malformation. *MacKenzie*, 411 F.2d at 783. Accordingly, the insurance policy was void *ab initio* because Chad Jude included a material misrepresentation in his application.[10]

---

[10]     At oral argument, and in their response brief, the Judes argued that, even if Chad Jude did include a material misrepresentation in his application, American General can still be liable for rescinding the policy in bad faith. (Doc. # 98 at 16). This argument is premised on *Estate of Riddle ex rel. Riddle v. Southern Farm Bureau Life Insurance Co.*, 421 F.3d 400, 407-08 (6th Cir. 2005). *Riddle*, however, is distinguishable. "*Riddle* involved a conditional receipt of an insurance application . . . [which] requires a good faith determination of the applicant's insurability, regardless of whether the applicant was actually insurable." *Jones v. Monumental Life Ins. Co.*, 502 F. Supp. 2d 601, 605 (E.D. Ky. 2007). In *Riddle*, there was a contract of insurance *subject to the insurer's determination* that the proposed insured was "a risk insurable by the Company under its rules, limits, and standards for the plan and amount applied for"; the court found that the determination had to be made in good faith. *Estate of Riddle*, 421 F.3d at 406-07. Thus, the reasoning of *Riddle* does not apply because there was no conditional receipt in this case, nor was a policy ever formed, as discussed *supra*.

This case is further distinguished from *Riddle* because of the absence of evidence of bad faith. "To survive a motion for summary judgment, a plaintiff in a bad faith action must come forward with evidence, sufficient to defeat a directed verdict at trial, which reveals some act of conscious wrongdoing on the part of the insurer." *Id.* at 609 (quoting *Jarvis v. Monumental Life Ins. Co.*, No. Civ.A. 404CV140M, 2005 WL 3132339, at *4 (W.D. Ky. Nov. 21, 2005). In *Riddle* there was significant evidence of bad faith. For example, two underwriters cited rheumatoid arthritis as a reason to deny coverage despite a blood test indicating the proposed insured did not have the ailment, and all three underwriters noted a vague reference to alcohol abuse in a 1996 letter as a problem despite no mention of that issue in the proposed insured's medical records. *Estate of Riddle*, 421 F.3d at 408.

Here, the Judes have put forth no record evidence to suggest wrongdoing on the part of American General. The Judes point to the Swiss Re document, a risk table used by the American General underwriters which the Judes sought to have excluded, as the smoking gun indicating American General acted in bad faith when it rescinded the policy after Chad Jude had been diagnosed with ALS. Their argument appears to rest on the fact that the Swiss Re table related to a diagnosis of Syringomyelia, and Arnold Chiari Malformation appears on the chart as a sub-diagnosis. (Doc. # 90-5). Specifically, the Judes speculated during oral argument that the underwriter, in bad faith and knowing nothing about either neurological disorder, overextended the Swiss Re table to rescind the policy due to Chad Jude's Chiari I Malformation. The Judes claim, however, that rescission on this ground was pretext for rescinding the insurance policy because Chad Jude had been diagnosed with ALS. The Judes put forth no record evidence of this; when asked at oral argument what evidence there was of bad faith, counsel for the Judes indicated that the Swiss Re document and the date of Chad Jude's ALS diagnosis was the only evidence

Even if failing to disclose this change in health is not considered a material misrepresentation under Ky. Rev. Stat. § 304.14-110(2), Chad Jude's policy is still void under Ky. Rev. Stat. § 304.14-110(3) because American General would have postponed issuance of the policy had it been aware of Chad's new health problems.[11] The underwriter at American General, Laura Stout, testified that issuance of the policy would have been postponed had the application been filled out truthfully. (Doc. # 70-1 at 26:3-26:20). Under Kentucky law, testimony of an underwriter alone is sufficient to support a finding that a policy would not have been issued or would have been issued differently, had the applicant been truthful. *See Continental Cas. Co.*, 676 F.3d at 540 (finding the argument that "testimony of the insurance company's own employee is not sufficient for a finding of materiality" to be incorrect); *Conner v. Shelter Mut. Ins. Co.*, 779 F.2d 335, 339 (6th Cir. 1985) (affirming a district court's conclusion that relied on underwriter testimony to hold that the company "would have refused insurance to an applicant").

While the Judes suggested at oral argument that there is a genuine issue of material fact as to whether the policy would have been issued, they do not put forth any record evidence to suggest that American General would have issued the policy had the application been truthful. The Judes merely speculate that the policy may have been issued had the application been truthfully completed and American General acted in good

---

they had. The Judes merely speculate that the insurer acted in bad faith. Speculation, however, is not sufficient to defeat summary judgment. *Bradley v. Wal-Mart Stores East, LP*, 587 F. App'x 863, 866 (6th Cir. 2014).

[11] American General indicated at oral arguments that postponing issuance of a policy is sufficient to satisfy Ky. Rev. Stat. § 304.14-110(3). The company, through counsel, failed to present case law in support of that proposition. The Court, in reviewing the statute, however, agrees that postponing a decision on whether to issue a policy is on par with not issuing the policy, not issuing "it at the same premium rate," not issuing it "in as large an amount," or not having "provided coverage with respect to the hazard resulting in the loss." Ky. Rev. Stat. § 304.14-110(3).

faith. "A properly supported motion for summary judgment will not be defeated by conclusory allegations, speculation and unsubstantiated assertions." *Bradley*, 587 F. App'x at 866. Thus, the Court finds that there is no *genuine* issue of material fact as to whether American General would not have issued the policy had the application been completed truthfully.

As discussed *supra*, "[w]here the policy would not have issued without the false statement, the statute voids the policy at its inception—as if the policy had never existed." *Nelson* 912 F. Supp. 2d 452, 454; *see also Rosing*, 891 F. Supp. at 380 (finding the insurance policy to be void at inception because of material misrepresentation). Accordingly, as there is no issue of material fact that the misrepresentation was material, the policy would be void *ab initio* and must be treated as if it never existed.

### D.    Replacement Statute (Count II)

In response to the declaratory-judgment action, the Judes asserted a number of counterclaims regarding American General's rescission of the 1.5-million-dollar policy. (Doc. # 15). American General moved for summary judgment on each of these counterclaims. (Doc. # 86 at 20-26). First, the Judes argue that American General violated the Kentucky Insurance Code—specifically Ky. Rev. Stat. § 304.12-030—by rescinding the entire 1.5-million-dollar policy. (Docs. # 87 at 17-23 and 98 at 21-23). Kentucky law requires that replacing insurers agree in writing with an insured that a "new life insurance policy . . . issued by the replacing insurer will not be contestable by it in the event of such insured's death to any greater extent than the existing life insurance policy . . . would have been contestable by the existing insurer had such replacement not taken place." Ky. Rev. Stat. § 304.12-030. The purpose of the law "is to prevent an insured

from inadvertently, or upon being persuaded by an insurance agent, replacing a policy that is no longer contestable with a policy that is contestable." *Harshman*, 2015 WL 5474177, at *7.

The Judes claim that American General violated this statute when it rescinded the entire 1.5-million-dollar replacement policy, despite the fact that Chad Jude's half-million-dollar replaced policy, which he purchased in 2014, was incontestable. (Doc. # 98 at 21-23). The Judes suggested at oral argument that the replacement policy could only have been rescinded to the tune of $1,000,000.

As Judge Bertelsman noted, there appears to be "no Kentucky authority on the interpretation of this statute." *Harshman*, 2015 WL 5474177, at *7. As the Court reads the statute, however, the replacement rules are not implicated in the case at bar. The Court has already found that the 1.5-million-dollar policy never went into effect. *See supra* Part III.C.3-4. In other words, there was never a valid replacement policy, which would trigger application of the replacement statute. As there was no "new life insurance policy" to be contested (or have contestability limited), the Court finds that the replacement statute does not apply. Thus, summary judgment will be **granted** for American General on this claim.

Additionally, even if the replacement statute was violated by American General's actions, the Court finds that the issue is moot. Upon a plain reading of the statute, and guided by Judge Bertelsman's interpretation, the purpose of this statute is to ensure that the beneficiaries of an insured receive, at a minimum, those benefits owed under an incontestable policy, even if a larger replacement policy is contested. Applying that rule here, the law stands to ensure that the beneficiaries of Chad Jude receive benefits from

the half-million-dollar policy. (Doc. # 102 at 9). In August of 2018, American General sent Lori Jude a check for $533,424.21. (Doc. # 86-12). That sum represented the half-million-dollar policy plus interest and less the premiums that would have been paid on the half-million-dollar policy had it stayed in effect. *Id.* As the beneficiaries of Chad Jude received the benefit protected by this statute, the Court finds the issue of violation of the replacement statute to also be moot.

### E.    Other Statutory and Common-Law Claims

Under either approach—the condition precedent or the material misrepresentation—the Court concludes that the policy was void *ab initio* and treats the policy as if it never existed. As a result, all of the Judes' other claims fail as each requires a valid contract.

### 1.    *Breach of Contract (Count I)*

The Judes bring a common-law breach-of-contract claim against American General arguing that "American General anticipatorily repudiated the [1.5-million-dollar life-insurance] contract by attempting to rescind same prior to the death of Chad Jude." (Doc. # 15 at 8). American General moves for summary judgment on this claim. The Judes' argument fails as a matter of law. As discussed *supra*, there was never a valid contract between American General and Chad Jude forming the at-issue, 1.5-million-dollar policy. The conditions precedent to contract formation were not met, and thus there was never an insurance-policy contract in existence. The first element of a breach-of-contract action in Kentucky is "the existence of a valid contract." *Myers v. AgriLogic Ins. Servs., LLC*, 694 F. App'x 373, 376 (6th Cir. 2017). As there was no valid contract, a breach-of-contract action cannot lie, and summary judgment is appropriate for American

General.

Even if the conditions precedent had been met and the insurance contract formed, Chad Jude made a material misrepresentation on his insurance application which voided the policy *ab initio*—as if the contract had never existed. *Nelson*, 912 F. Supp. 2d at 454. "Under Kentucky law, a party may not predicate a cause of action upon a void contract"; so there can be no breach-of-contract action brought on a contract that was void *ab initio*. *Ellis v. Arrowood Indem. Co.*, No. 7:12-cv-140-ART, 2014 WL 2818458, at *3 (E.D. Ky. June 23, 2014) (citing *Smith v. Agnew*, 122 S.W. 231, 231 (Ky. 1909)). Accordingly, American General's summary-judgment motion on the Judes' breach-of-contract claim is **granted**.

### 2. *Unfair, Deceptive Practices (Count III)*

The Judes also argue that American General violated the statutory prohibition on "unfair and deceptive practices by insurance companies"—Ky. Rev. Stat. § 304.12-010. (Doc. # 15 at 9-10). The Judes argue that any failure to follow insurance regulations is a violation of Ky. Rev. Stat. § 304.12-010. (Doc. # 87 at 23). They specifically claim that American General violated 806 KAR 12:080 Section 5(e)—the requirement that a replacing insurer must "[a]llow credit for the period of time that has elapsed under the replaced policy's or contract's incontestability and suicide period up to the face amount of the existing policy or contract." 806 KAR 12:080.

Like the replacement statute itself, the regulations do not apply to the case at bar. Section 5 of the regulations requires that a "replacement [be] involved in the transaction." 806 KAR 12:080. In this case, however, there was no replacement policy. *See supra* Part III.C.3-4. Accordingly, the insurance regulations were not violated, and summary

judgment for American General is appropriate on the unfair-and-deceptive-practices claim. Therefore, American General's summary-judgment motion on this claim is **granted**.

### 3.    *Statutory and Common-Law Bad Faith (Counts IV, V, VI)*

The Judes bring three claims—two statutory and one common-law—for bad faith. First, the Judes claim that American General violated each statutory requirement of the Kentucky Unfair Claims and Settlement Practices Act (UCSPA)— Ky. Rev. Stat. § 304.12-230—by acting in bad faith. The Judes claim that these violations occurred and are ongoing. (Doc. # 15 at 11-12). The USCPA "imposes what is generally known as the duty of good faith and fair dealing owed by an insurer to an insured . . . it proscribes a list of particular acts and practices." *Knotts v. Zurich Ins.*, 197 S.W.3d 512, 515 (Ky. 2006). "A cause of action for a violation of the USCPA may be maintained only where there is proof of bad faith of an outrageous nature. It must be sufficient for a jury to conclude that the insurer's intentional misconduct emanated from an evil motive or a reckless indifference to the rights of others." *Hamilton Mut. Ins. Co. of Cincinnati v. Buttery*, 220 S.W.3d 287, 292 (Ky. Ct. App. 2007).

The Judes also claim that American General "engaged in unfair misleading or deceptive acts or practices" in violation of Kentucky's Consumer Protection Act, Ky. Rev. Stat. § 367.170. (Doc. # 15 at 12). Specifically, the Judes argue that if the Unfair and Deceptive Practices statute—Ky. Rev. Stat. § 304.12-010—is violated (Count III), then the Consumer Protection Act, which prohibits unfair, misleading and deceptive practices in trade and commerce, is also violated. (Doc. # 98 at 20-21). A violation of the Consumer Protection Act also gives rise to a statutory bad-faith claim. *Harshman*, 2015 WL

5474177, at *8.

Finally, the Judes brought a common-law claim that American General breached its duty to act in good faith. (Doc. # 15 at 12). They claim that American General breached this duty by failing to "fully explain the application process and forms to Chad Jude," "not properly training, monitoring and supervising its agents during solicitation and application process," and "failing to advise Chad Jude, upon his inquiry, of what benefit amount is contestable and for how long that contestability lasts under the replacement policy." *Id.* at 12-13.

The common-law and statutory bad-faith claims all require the same elements to be proven. *Harshman*, 2015 WL 5474177, at *8. The Judes must show "(1) that the insurer was obligated to pay the claim under the terms of the policy, (2) that the insurer lacked a reasonable basis in law or fact for denying the claim, and (3) that the insurer knew there was no reasonable basis for denying the claim." *Id.* (citing *Davidson v. Am. Freightways, Inc.*, 25 S.W.3d 94, 100 (Ky. 2000)). "Because an element of each bad faith claim is American General's obligation to pay on the policy and there was no valid contract of insurance between it and [Chad Jude], America General did not have an obligation to pay." *Id.* Therefore, the Court must **grant** American General's summary-judgment motion on the Judes' three bad-faith claims.

### 4. *Punitive Damages (Count VII)*

The Judes additionally brought a claim for punitive damages. American General moved for summary judgment on this claim as well, though puts forth no argument in support of its Motion. (Doc. # 86). Despite this, American General is entitled to summary judgment on this claim as pled. "A claim for punitive damages is not a separate cause of

action, but a remedy potentially available for another cause of action." *Grubbs v. Thermo Fisher Sci.*, No. 2:13-cv-183-DLB-CJS, 2014 WL 1653761, at *3 (E.D. Ky. Apr. 23, 2014) (quoting *Dalton v. Animas Corp.*, 913 F.Supp.2d 370, 378 (W.D. Ky. 2012)). As the Judes have not stated a valid claim, summary judgment is appropriate. Additionally, "[t]here is no recovery and no bad faith, therefore obviously the insured cannot recover punitive damages." *Harshman*, 2015 WL 5474177, at *8.

For the reasons set forth herein, American General's Motion for Summary Judgment is **granted**, and the Judes' Motion for Summary Judgment is **denied**.

## IV.    OTHER PENDING MATTERS

By granting summary judgment for American General and subsequently dismissing this action from the Court's active docket, the Court need not address the arguments raised in the Motion for Judgment on the Pleadings as to whether Lori Jude is a proper party to this litigation. (Doc. # 79). This issue has no impact on the Court's analysis of the summary-judgment motions. Further, the remaining matters before the Court—two motions to Exclude (Docs. # 84 and 88) and Objections to Magistrate Judge Atkins's January 24, 2019 Order (Doc. # 106)—are also moot. In resolving the summary judgment motions, the Court did not rely on the evidence at issue in the Motions to Exclude (Docs. # 84 and 88) nor the Motion for Sanctions and its accompanying Objections. (Docs. # 73 and 106). Thus, the Court need not rule on the other remaining Motions or Objections to Magistrate Judge Atkins's Order. Therefore, those Motions and Objections are **denied/overruled as moot**.

## V.  CONCLUSION

Accordingly, for the reasons set forth herein, **IT IS HEREBY ORDERED** that:

(1)  American General's Motion for Summary Judgment (Doc. # 86) is **GRANTED**;

(2)  The Judes' Motion for Summary Judgment (Doc. # 87) is **DENIED**;

(3)  American General's Motion for Judgment on the Pleadings (Doc. # 79) is **DENIED AS MOOT**;

(4)  The Judes' Motion to Exclude (Doc. # 84) is **DENIED AS MOOT**;

(5)  American General's Motion to Exclude (Doc. # 88) is **DENIED AS MOOT**;

(6)  The Judes' Objections to Magistrate Judge Atkins's January 24, 2019 Order (Doc. # 106) are **OVERRULED AS MOOT**;

(7)  This matter is **DISMISSED** and shall be **STRICKEN** from the Court's active docket; and

(8)  A Judgment in favor of American General will be entered contemporaneously herewith.

This 21st day of May, 2019.

Signed By:

*David L. Bunning*

United States District Judge