UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT ASHLAND

CRIMINAL ACTION NO. 17-90-DLB-EBA

AMERICAN GENERAL LIFE INSURANCE COMPANY          PLAINTIFF

v.         **MEMORANDUM OPINION AND ORDER**

ESTATE OF CHAD JUDE, by and through its
executrix Lori Jude; LORI JUDE, individually          DEFENDANTS

\* \*  \* \*  \* \*  \* \*  \* \*  \* \*  \* \*  \* \*

Plaintiff American General Life Insurance Company ("American General"), filed the underlying action in 2017, seeking a declaratory judgment voiding a $1.5 million 2015 life insurance policy ("the 2015 policy") issued to Defendant Chad Jude. (Doc. # 1 at 1). American General alleged that Jude had misrepresented the state of his health in his application for the 2015 policy. (*Id.*). In 2019, this Court granted American General's Motion for Summary Judgment, (Doc. # 112), which Jude appealed, (Doc. # 119). The United States Court of Appeals for the Sixth Circuit affirmed in part, reversed in part, and remanded the case to the District Court for further findings consistent with the Sixth Circuit opinion. (Doc. # 122).

Following remand, American General filed a Motion for Summary Judgment. (Doc. # 130). The Motion has been fully briefed, (Docs. # 133 and 134), and is now ripe for the Court's review. For the reasons set forth herein, Plaintiff's Motion for Summary Judgment (Doc. # 130) is **granted in part and denied in part**.

1

I.   FACTUAL AND PROCEDURAL BACKGROUND

The relevant facts of this case were described in the Court's previous order, (Doc. # 111), and were further described by the Sixth Circuit, (Doc. # 122). Therefore, only a basic description of the underlying dispute is needed.

In 2014, American General issued Chad Jude a $500,000 life insurance policy ("the 2014 policy"). (Doc. # 15 at 5). The following year, American General offered Jude the ability to replace the 2014 policy, and Jude increased his coverage to $1.5 million. (*Id.*). The 2015 policy was intended to be a replacement policy for the 2014 policy. (*Id.* at 6). In completing the "Policy Acceptance and Amendment of Application" for the 2015 policy, Jude failed to disclose a change in his health condition—namely, his diagnosis with Chiari I malformation. (Docs. # 1-2 and 122 at 4). American General sought to rescind the 2015 policy after becoming aware of Jude's omission, but Jude refused to sign a voluntary recission agreement, at which point American General filed suit for declaratory judgment. (Docs. # 1 at 4 and 122 at 5). In its Complaint and further communications with Jude, American General failed state whether Jude would receive any payment from the 2014 policy. (*See* Docs. # 1 and 122 at 13).

Jude filed numerous counterclaims against American General, including, among others, claims for breach of contract, violation of the replacement life insurance statute (Ky. Rev. Stat. § 304.12-030), and violation of the unfair and deceptive practices statute (Ky. Rev. Stat. § 304.12-010). (Doc. # 15 at 8-11). On December 30, 2017, Jude died. (Doc. # 30 at 1). Thereafter, the Court granted the Motion to Substitute the Estate of Chad Jude as a defendant and cross-claimant. (Doc. # 31). In August of 2018, American General paid Chad Jude's wife, Lori Jude, $533,424.21 in death benefits stemming from

the 2014 policy. (Doc. # 86-12). In May of 2019, this Court granted summary judgment in favor of American General, holding that the 2015 policy was void *ab initio* and therefore that American General did not owe anything to Lori Judge under the 2015 policy. (Doc. # 111 at 23, 32).

On appeal, the Sixth Circuit held that "American General violated Kentucky's replacement life insurance regulation by purporting to rescind the entire replacement policy and not providing the required contestability credit for the replaced policy until months after bringing the lawsuit." (Doc. # 122 at 1-2). A brief explanation of the contestability credit is necessary. In the life insurance context, a contestability period is a set time frame following the purchase of a policy where if the insured dies, the insurer reserves the right to contest the claim, usually based on statements made in the insured's application. In order to protect consumers, Kentucky created a regulation that governs contestability periods and credits in the context of replacement life insurance policies, like the one at issue here. *See* 806 Ky. Admin. Regs. ("KAR") 12:080 § 5(e). That regulation states—"[i]f a replacement is involved in the transaction, the replacing insurer shall: [a]llow credit for the period of time that has elapsed under the replaced policy's or contract's incontestability and suicide period up to the face amount of the existing policy or contract." *Id.* In other words, under Kentucky's insurance regulations, when providing a replacement policy an insurer must credit the insured for the amount of time the insured held the previous policy when determining whether the insurer can contest the policy. This is referred to as a contestability credit.

In the 2015 policy, American General included a clause stating that it would "not contest this policy after it has been in force during the lifetime of the Insured for two years

3

from the Date of Issue. If We contest this policy, We will contest it based only on statements made in the application." (Doc. # 1-3 at 6). In a separate document, the Policy Endorsement, American General stated, in compliance with 806 KAR 12:080 § 5(e), that the "Policy's Contestability provision will allow credit from the period of time elapsed under the Replaced Policy's Contestability provision. The credit will apply to the Face Amount of the Replaced Policy." (*Id.* at 15). The Sixth Circuit considered Mr. Jude's policy to be a replacement policy, as defined by Ky. Rev. Stat. § 304.12-030. (Doc. # 122 at 13). Therefore, American General was only allowed to rescind $1 million of the 2015 policy, and was required to pay the $500,000 2014 policy amount, but instead waited seventeen months to do so. (*Id.*). During this time, the Judes asserted that they suffered immense emotional distress stemming from the possibility that they would receive no life insurance protection. (*Id.* at 14). According to the Judes, Mr. Jude died not knowing if they would receive any life insurance proceeds. Because of this lapse in time, the Sixth Circuit determined that "American General's initial rescission of the entire 2015 policy and extensive delay in providing the replaced 2014 policy value therefore violated Kentucky's replacement life insurance regulation that provides protections for insured individuals." (*Id.*).

The issue is no longer whether Jude misrepresented his health conditions to American General; it has been affirmatively decided that he did. (*Id.* at 10-12). Instead, on remand, the Sixth Circuit directed this Court to determine whether the Judes can recover damages for an injury suffered due to American General's violation of 806 KAR 12:080 § 5(1)(e). (*Id.* at 14). To succeed, "the Judes will have to show that a violation of the regulation amounted to a violation of the Insurance Code, and that Ky. Rev. Stat. Ann.

§ 446.070 provides a damages cause of action for such a violation. If so, the Judes must then presumably show that the regulation so incorporated protects against the injuries they assert, and then prove up the damages alleged to have been caused by the violation . . . ." (*Id.* at 14-15) (internal citations omitted).

## II. ANALYSIS

### A. Standard of Review

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A genuine issue of material fact exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party moving for summary judgment "bears the burden of showing the absence of any genuine issues of material fact." *Sigler v. Am. Honda Motor Co.*, 532 F.3d 469, 483 (6th Cir. 2008) (citing *Plant v. Morton Int'l Inc.*, 212 F.3d 929, 934 (6th Cir. 2000)). In deciding a motion for summary judgment, the Court must draw all reasonable inferences in favor of the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Following the Court's review of the record, if a "rational factfinder could not find for the nonmoving party, summary judgment is appropriate." *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 349 (6th Cir. 1998).

### B. The Regulation and Related Statute

The Sixth Circuit decided that American General violated Kentucky's replacement life insurance regulation. (Doc. # 122 at 1-2). The regulation, 806 KAR 12:080 § 5(1)(e), as discussed above, states—"[i]f a replacement is involved in the transaction, the

replacing insurer shall: [a]llow credit for the period of time that has elapsed under the replaced policy's or contract's incontestability and suicide period up to the face amount of the existing policy or contract." The pertinent question is whether the violation of 806 KAR 12:080 § 5(1)(e) is also a violation of Kentucky's unfair competition statute—Ky. Rev. Stat. ("KRS") § 304.12-010. That statute, titled "Unfair competition; unfair, deceptive practices prohibited," states, "[n]o person shall engage in this state in any practice which is prohibited in this subtitle, or which is defined therein as, or determined pursuant thereto to be, an unfair method of competition or any unfair or deceptive act or practice in the business of insurance." KRS § 304.12-010. It is contemplated within 806 KAR 12:080 that "[a]ny failure to comply with this administrative regulation shall be considered a violation of KRS 304.12-010." 806 KAR 12:080 § 8(1). So long as these regulations, both §§ 5(1)(e) and 8(1), do not "extend, modify, or conflict with any law of this state or the reasonable implications thereof," KRS § 304.12-010(1), it follows that American General's violation of § 5(1)(e) constitutes a violation of KRS § 304.12-010.

However, American General argues that the regulation, as interpreted by the Sixth Circuit, is invalid and unenforceable because the regulation is broader than the statute on which it is based. (Doc. # 130 at 27) ("Regulations are 'subordinate rules' and 'may not exceed the scope of the statutory provisions on which they are based.'") (quoting *Faust v. Commonwealth*, 142 S.W.3d 89, 98 (Ky. 2004)). By contrast, the Judes argue that *Chevron* deference applies and therefore substantial deference is given to agency interpretation "as long as that interpretation is consistent with the statutory or regulatory language at issue." (Doc. # 133 at 14) (citing *Louisville Gas & Elec. Co. v. Ky. Waterways All.*, 517 S.W.3d 479, 489 (Ky. 2017)). While the Kentucky Supreme Court has declared

6

that "[i]ssues of statutory construction are matters of law for the courts to resolve, and the reviewing court is not bound by an administrative body's interpretation of a statute," *Bd. of Educ. of Fayette Cnty. v. Hurley-Richards*, 396 S.W.3d 879, 886 (Ky. 2013), it has also "recognized the deference afforded [to] an administrative agency's construction of a statute that it is charged with implementing, so long as the agency interpretation is in the form of an adopted regulation or formal adjudication," *Louisville/Jefferson Cnty. Metro Gov't v. TDC Grp., LLC*, 283 S.W.3d 657, 661 (Ky. 2009) (internal quotations omitted). Multiple times, Kentucky courts have recognized *Chevron* deference in reviewing state agency interpretations of state law. *See, e.g., Bd. of Trs. of Judicial Form Ret. Sys. v. Att'y Gen. of the Commonwealth*, 132 S.W.3d 770, 786-87 (Ky. 2003); *Commonwealth, ex rel. Stumbo v. Ky. Pub. Serv. Comm'n*, 243 S.W.3d 374, 380 (Ky. Ct. App. 2007). Even prior to the *Chevron* decision, Kentucky recognized that "deference is always given to an administrative agency in the interpretation of a statute which is within its specific province." *Beshear v. Ky. Utils. Co.*, 648 S.W.2d 535, 537 (Ky. Ct. App. 1982). Here, the Insurance Code specifically contemplates that the Commissioner of the Department of Insurance in Kentucky will have the power to "make reasonable rules and regulations necessary for or as an aid to the effectuation of any provision of this code." KRS § 304.2-110. Therefore, both the statute itself and the deference afforded by Kentucky courts allow for the Commissioner to create regulations, such as 806 KAR 12:080 § 5, to carry out the legislature's statutory intent as long as they do not extend, modify or conflict with Kentucky law.

Although Kentucky courts afford the general deference discussed above to agency regulations, the regulation still may not be broader than the statute on which it is based.

7

American General argues that under the decision in *Faust*, the regulation here is broader than the statute and therefore unenforceable. However, American General leaves out important context from the relevant rule—"such regulations may not exceed the scope of the statutory provisions on which they are based, *and are valid only as subordinate rules when found to be within the framework of the policy defined by the legislation*." *Faust*, 142 S.W.3d at 98 (internal quotation marks omitted) (emphasis added). As discussed above, the legislative enactment of the Insurance Code states that "[n]o person shall engage in this state any practice which is prohibited in this subtitle, or which is defined therein as, or determined pursuant thereto to be, an unfair method of competition or any unfair or deceptive act or practice in the business of insurance." KRS § 304.12-010. This grant is extremely broad. Even more importantly, the statute expressly grants authority to the Commissioner to "make reasonable rules and regulations" so long as they do not extend, modify, or conflict with Kentucky law. KRS § 304.2-110(1). As noted in *Faust*, a regulation does not extend, modify, or conflict with Kentucky law so long as it is "found to be within the framework of the policy defined by the legislation." 142 S.W.3d at 98 (internal citations omitted).

In enacting the Insurance Code in 1970, the legislature included a general statement of intent: "a great need exists in the Commonwealth of Kentucky for an insurance code that would contain, among other things, the following protections: (a) Protect policyholders and all having an interest under insurance policies, (b) Implement the public interest in the business of insurance; . . . (d) Prevent misleading, unfair and monopolistic practices in insurance operations . . . ." Kentucky Insurance Code, ch. 301, 1970 Ky. Acts 1004. 806 KAR 12:080 § 5(1)(e) falls within the framework of the

8

legislature's general intent.  The regulation provides for a mechanism to ensure that policyholders and others are protected when an insurer violates the regulations enacted specifically to carry out the law as stated in the Kentucky Insurance Code.  If there was no such mechanism, insurers would be able to flaunt the regulations meant to implement the Insurance Code without any repercussions.

Finally, American General argues that the agency regulation here cannot be "bootstrapped" to a statutory violation.  (Doc. # 130 at 23-24).  However, the Kentucky Supreme Court's decision in *Hargis v. Baize* directly rebuts American General's position. 168 S.W.3d 36 (Ky. 2005).  In *Hargis*, the court discussed whether a violation of the Kentucky Occupational Safety and Health Act ("KOSHA") regulation was also a violation of the statute under which the KOSHA regulations were promulgated.  *Id.* at 41-42. Ultimately, the court concluded that because the statute promulgating the regulation stated that employers are required to follow regulations created by the KOSHA Standards Board "a violation of a KOSHA regulation would constitute a violation of" the statute, "thus triggering the right of action created by KRS § 446.070." *Id.* at 42.  Although a different statute, the Insurance Code, is at issue here, the underlying reasoning still applies.  The Insurance Code grants the Commissioner of the Department of Insurance the power to "make reasonable rules and regulations necessary for or as an aid to the effectuation of any provision of this code,"  KRS § 304.2-110, and 806 KAR 12:080 § 5(1)(e) in turn specifically provides that a violation of the regulations is a violation of the statute.  Thus, like in *Hargis*, the violation of a regulation triggers the negligence cause of action codified by KRS § 446.070.

Thus, because Kentucky courts defer to an administrative agency when its practices are codified by a regulation and the Kentucky Legislature intended to give a broad grant of authority to the Commissioner to carry out the purposes of the statute, 806 KAR 12:080 § 5(1)(e) is enforceable.

### C. The Negligence Statute

Because American General, by violating the enforceable regulation found at 806 KAR 12:080 § 5(1)(e), violated KRS § 304.12-010, the next question is whether the Judes may recover for this violation. The negligence per se statute, KRS § 446.070, provides that "[a] person injured by the violation of any statute may recover from the offender such damages as he sustained by reason of the violation, although a penalty or forfeiture is imposed for such violation." American General argues that the Judes cannot recover under KRS § 446.070 for the violation of a regulation without showing that they are in the class of persons meant to be protected by the regulation and that the regulation is concerned with safety of the citizenry. (Doc. # 130 at 22). However, this argument is premised on the understanding that American General *only* committed a regulatory violation, and did not violate KRS § 304.12-010. As discussed above, American General did violate KRS § 304.12-010 by violating 806 KAR 12:080 § 5(e)(1), so any argument that the regulation must address public safety is moot. *See McCarty v. Covol Fuels No. 2, LLC*, 476 S.W.3d 224, 228 (Ky. 2015) ("[W]hen a provision of the enabling statute for the promulgation of administrative regulations expressly mandates compliance with those regulations, the violation of the regulation is equivalent of a violation of a statute, thereby bringing the regulation within the scope of KRS 446.070."); *Hargis*, 168 S.W.3d at 41-42 (holding that violation of a regulation constituted violation of a statute when the statute

provided authority for the development of further rules and regulations).

KRS § 446.070 provides a private right of action for damages due to the violation of Kentucky statutes, including the insurance statute American General violated here. As stated by the Sixth Circuit, "[t]he remedy for violation of [KRS § 304.12-010] is created by Ky. Rev. Stat. § 446.070." *Int'l Res., Inc. v. New York Life Ins. Co.*, 950 F.2d 294, 300 (6th Cir. 1991); *see also State Farm Mut. Auto. Ins. Co. v. Reeder*, 763 S.W.2d 116, 118 (Ky. 1988) (holding that claimants may pursue a private right of action under KRS § 446.070 for violations of Kentucky's insurance statute). Recently, another court in the Eastern District of Kentucky found the same. *Prewitt v. Gerber Life Ins. Co.*, No. 6:20-cv-27-REW-HAI, 2021 WL 624742, at *5 (E.D. Ky. Feb. 27, 2021).

Because KRS § 446.070 "is merely a negligence claim with a statutory standard of care substituted for the common law standard of care," in order to recover, the Judes must make out the elements of a negligence claim. *See Young v. Carran*, 289 S.W.3d 586, 588-89 (Ky. Ct. App. 2008). These elements are: "duty (created and defined by KRS 304.12-010 []), breach (by doing one of the acts described in KRS 304.12-010 []), causation, and damages." *Prewitt*, 2021 WL 624742, at *5. Additionally, KRS § 446.070 "applies only if the alleged offender has violated a statute and the plaintiff was in the class of persons which that statute was intended to protect," *Davidson v. Am. Freightways, Inc.*, 25 S.W.3d 94, 99-100 (Ky. 2000), and "the injury suffered must be an event which the regulation was designed to prevent," *Carman v. Dunaway Timber Co., Inc.*, 949 S.W.2d 569, 570 (Ky. 1997). "If both questions are answered in the affirmative, negligence per se is established and the applicable regulation defines the relevant standard of care." *Id.* (citing *Lomayestewa v. Our Lady of Mercy Hosp.*, 589 S.W.2d 885,

887 (Ky. 1979)).

The Court must decide whether there is a genuine issue of material fact as to whether the elements of negligence have been established through American General's violation of the Insurance Code.[1] Here, the elements of duty, established by KRS § 304.12-010, and breach, established by violation of KRS § 304.12-010, have been satisfied. *See Prewitt*, 2021 WL 624742, at *5.

As for causation, "in order for a statutory violation to become negligence per se, the plaintiff must be a member of the class of persons intended to be protected by the regulation, and the injury suffered must be an event which the regulation was designed to prevent." *Carman*, 949 S.W.2d at 570. But, "[g]enerally, legal causation is a question of fact." *Helton v. Am. Gen. Life Ins. Co.*, 946 F. Supp. 2d 695, 704 (W.D. Ky. 2013). Determining whether the statute intended to protect a specific individual "requires an assessment of the legislative intent behind the statute." *McCarty*, 476 S.W.3d at 229. As discussed above, the legislature in enacting the Insurance Code included a statement of intent, which among other things, illustrates that the statute was intended to "(a) Protect policyholders and all having an interest under insurance policies." Kentucky Insurance Code, ch. 301, 1970 Ky. Acts 1004. However, the statement of intent expressly contemplates Jude, as a policy holder, and Ms. Jude as an individual "having an interest under insurance policies." *Id.* Indeed, in his will Mr. Jude left the proceeds of the policy to his wife. Therefore, contrary to American General's argument, Ms. Jude is likely within the class of individuals meant to be protected by the statute.

---

[1] As American General is the party moving for summary judgment, it bears the burden of showing there is no genuine issue of material fact. See *Sigler*, 532 F.3d at 483 (citing *Plant*, 212 F.3d at 934). American General did not discuss the elements of a statutory negligence per se claim in its Motion for Summary Judgment, or in its Reply. (See Docs. # 130 and 134).

American General's action of violating the regulation and statute by "initially rescind[ing] the entire $1.5 million replacement 2015 policy and [] not provid[ing] credit for the 2014 policy for about 17 months," caused the Judes to "endure[] about 17 months of not knowing whether they would receive anything."  (Doc. # 122 at 13 and 16).  This injury suffered by the Judes goes to the heart of what the Insurance Code was designed to address—protecting policyholders and preventing deceptive insurance practices.  *See* Kentucky Insurance Code, ch. 301, 1970 Ky. Acts 1004.  Because the Court has decided that Ms. Jude was within the class of persons intended to be protected by the statute and the injury suffered by the Judes was of the type of harm the statute was designed to prevent, "negligence per se [has been] established and the applicable regulation defines the relevant standard of care."  *Carman*, 949 S.W.2d at 570 (citing *Lomayestewa*, 589 S.W.2d at 887).  American General rests its argument on the negligence per se statute not providing a private right of action, and therefore does not discuss the standard of care implied by the statute.  (*See* Doc. # 130 at 14-19).  The Judes similarly argue that the negligence per se statute applies, but then do not discuss the relevant standard of care or whether the necessary elements of negligence are met.  (*See* Doc. # 133 at 23-25).  However, as American General is the party moving for summary judgment, it bears the burden of showing there is no genuine issue of material fact.  See *Sigler*, 532 F.3d at 483 (citing *Plant*, 212 F.3d at 934).  American General has not met its burden.

Contrary to American General's contention, the Judes do not need to show bad faith in order to recover under the negligence per se statute.  Neither KRS § 446.070 nor KRS § 304.12-010 makes any mention of bad faith.  And while the Judes brought a statutory bad faith counterclaim under the Unfair Claims Settlement Practices Act

13

(UCSPA), KRS § 304.12-230, that claim has already been adjudicated. (*See* Doc. # 111 at 29-30). In arguing that bad faith is required, American General improperly attempts to conflate a claim under KRS § 304.12-010 with a claim under KRS § 304.12-230.[2] While these claims are often asserted in tandem, see *Hall v. MLS Nat. Med. Evaluations, Inc.*, No. 05-185-JBC, 2006 WL 2367139, at *5 (E.D. Ky. Aug. 15, 2006), at least one court has rejected an insurer's argument that "allegations of negligence . . . are essentially bad faith claims that are subsumed by the UCSPA." *Adkins v. Shelter Mut. Ins. Co.*, No. 5:12-173-KKC, 2014 WL 4231230, at *7 (E.D. Ky. Aug. 26, 2014); *see also Ind. Ins. Co. v. Demetre*, 527 S.W.3d 12, 26 (Ky. 2017) (stating that a statutory bad faith claim is premised on either the Kentucky Consumer Protection Act, KRS § 367.170, or the UCSPA, KRS § 304.12-230, making no mention of KRS § 304.12-010); *Cook v. State Farm Mut. Auto. Ins. Co.*, No. 2002-CA-000801-MR, 2004 WL 2011375, at * 6 (Ky. Ct. App. Sept. 10, 2004) (denying an insurer's motion for summary judgment when insurer turned a KRS § 304.12-020 claim into a claim under the UCSPA and therefore did not meet its burden). Moreover, in other cases, courts have refused to grant a motion for summary judgment when the necessary elements of causation for negligence per se were met, and did so—without any discussion of bad faith. *See Helton*, 946 F. Supp. 2d at 703-04; *Hall v. MLS Nat. Med. Evaluations, Inc.*, No. 05-185-JBC, 2008 WL 973097, at *4 (E.D. Ky. Apr. 8, 2008).

---

[2] Indeed, the only case American General cites to that describes a claim under KRS § 304.12-010 as a statutory bad faith claim in turn relies upon a case for support where there was no claim asserted under KRS § 304.12-010, rather only a claim under KRS § 304.12-230. *Phelps v. Unum Provident Corp.*, 245 F. App'x 482, 487 (6th Cir. 2007) (citing *Rawe v. Liberty Mut. Fire Ins. Co.*, 462 F.3d 521 (6th Cir. 2006)).

Further, KRS § 304.12-230 and KRS § 304.12-010 differ in both their text and application. KRS § 304.12-230, as indicated by its title, applies to "Unfair claims settlement practices." KRS § 304.12-230 lays out seventeen specific practices that are designated as "unfair" in the settlement of claims, including "misrepresenting pertinent facts or insurance policy provisions relating to coverages at issue" and "refusing to pay claims without conducting a reasonable investigation based on all available information," among others. As discussed above, in relation to these types of practices, the Kentucky courts have implied a bad faith prerequisite, which further requires that the insurer denied the insured's original claim.

Unlike KRS § 304.12-230, KRS § 304.12-010 is not limited by its text to the settlement of policy claims. Instead, it broadly states that "no person shall engage in this state in any practice which is prohibited in this subtitle, or which is defined therein as, or determined pursuant thereto to be, an unfair method of competition or any unfair or deceptive act or practice in the business of insurance." KRS § 304.12-010. This section is known as the introductory section to the Insurance Code. As explained in *Helton v. American General Life Insurance Co.*, a plaintiff does not "fail[] to state a cause of action because they listed an introductory section," when discussing KRS § 304.12-010. 946 F. Supp. 2d at 703. Instead, KRS § 304.12-010 "makes clear that no person shall engage in any practice that is prohibited by all sections of subtitle 12." *Id.* at 704. In *Helton*, the plaintiffs alleged that American General, through an agent, acted deceptively and the plaintiffs were injured as a result of these deceptive acts. *Id.* Because legal causation, an element of negligence, is a question of fact, the court refused to grant summary judgment in favor of American General as to the claim under KRS § 304.12-010. *Id.*

Here, the Judes allege that American General acted negligently in violating the introductory section of the Insurance Code. (Doc. # 15 at 9-11). As for this section, it seems that courts have thus far not implied a bad faith requirement because the statute itself is a general prohibition on "deceptive and unfair" insurance practices and applies outside the context of claims settlement.

Additionally, the majority of the cases cited by American General purportedly requiring a showing of bad faith for recovery of damages in excess of the policy limit are distinguishable because they were decided in the narrow context of settlement of claims. *See, e.g.*, *Manchester Ins. & Indemnity Co. v. Grundy*, 531 S.W.2d 493, 497 (Ky. 1975) (holding that bad faith, instead of mere negligence, is required to show liability for failure to settle within policy limits); *Blue Cross and Blue Shield of Ky. v. Whitaker*, 687 S.W.2d 557, 559 (Ky. Ct. App. 1985) (holding the same); *Am. Physicians Assur. Corp. v. Schmidt*, 187 S.W.3d 313, 317 (Ky. 2006) (same). Indeed, as these cases indicate, the test utilized for common-law bad faith claims in Kentucky is specifically tailored to the recovery of damages for unpaid insurance policies, making it ill-suited to other types of insurance claims, such as the one brought by the Judes under KRS § 304.12-010.[3]

Therefore, because of the key differences between KRS §§ 304.12-010 and 304.12-230, in deference to the Sixth Circuit's instructions on how this case should be evaluated, (*See* Doc. # 122 at 14-15), and in view of the uncertainty in Kentucky common law, the Court concludes that to recover under the negligence statute, the Judes only

---

[3] To prevail on a bad faith claim, an insured must establish "(1) the insurer must be obligated to pay *the claim* under the terms of the policy; (2) the insurer must lack a reasonable basis in law or fact for denying *the claim*; and (3) it must be shown that the insurer either knew there was no reasonable basis for denying *the claim* or acted with reckless disregard for whether such a basis existed." *Wittmer*, 864 S.W.2d at 890 (Ky. 1993) (emphasis added).

have to prove the essential elements of a negligence claim, and do not have to make a showing of bad faith. Because American General has failed to establish the absence of a genuine issue of material fact regarding the Judes' negligence per se claim, its Motion for Summary Judgment is **denied**. (See Docs. # 130 and 134).

### D. Punitive Damages and Attorney's Fees

As for punitive damages, the Kentucky Supreme Court has held that "there must be sufficient evidence of intentional misconduct or reckless disregard of the rights of an insured or a claimant to warrant submitting the right to award punitive damages to the jury." *Wittmer*, 864 S.W.2d at 890. This standard requires the plaintiff to provide "proof of bad faith." *Id.* Unfortunately for the Judes, as stated in this Court's previous opinion, and the Sixth Circuit's opinion, there is no evidence of bad faith. (*See* Docs. # 111 and 122). The Sixth Circuit stated that "[t]he district court's ruling in American General's favor demonstrates that the company did not act in bad faith—even if its actions ultimately violated Kentucky's replacement life insurance regulation—as this shows there was room for reasonable disagreement as to the proper outcome of the contested legal issues in this case." (Doc. # 122 at 18).[4] Because the Judes cannot meet this standard, they may not recover punitive damages.

Additionally, in American General's Motion for Summary Judgment, it argued that the Judes were unable to recover attorney's fees. (Doc. # 130 at 32). The Judes Response contained no argument opposing American General's position that attorney's fees were unavailable. (*See generally* Doc. # 133). Because the Judes did not craft an

---

[4] The Sixth Circuit also noted that the Judes cannot satisfy the elements of a bad faith claim under Kentucky law because in order to do so the insurer must deny the claim, which American General did not do here. (Doc. # 122 at 17).

argument opposing American General's position, they have effectively waived any right to attorney's fees. *See Shelby Co. Health Care Corp. v. Majestic Star Casino, LLC*, 581 F.3d 355, 372 n.7 (6th Cir. 2009) (stating that "arguments not raised before the district court . . . generally are considered waived").

## III. CONCLUSION

Thus, for the reasons articulated herein, **IT IS HEREBY ORDERED** as follows:

(1) Plaintiff's Motion for Summary Judgment (Doc. # 130) is **granted in part and denied in part** as follows:

    (a) Plaintiff's Motion for Summary Judgment (Doc. # 130) is **granted** as to the Judes' cause of action for punitive damages;

    (b) Plaintiff's Motion for Summary Judgment (Doc. # 130) is **granted** as to the Judes' claim for recovery of attorney's fees; and

    (c) Plaintiff's Motion for Summary Judgment (Doc. # 130) is **denied** as to the Judes' negligence claim under KRS § 446.070.

This 12th day of July, 2021.



Signed By:
*David L. Bunning* DB
United States District Judge

O:\DATA\ORDERS\Ashland Civil\2017\17-90 MOO.docx